**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                                               :
BERKLEY ASSURANCE COMPANY,                                     :
                                                               :
            Plaintiff,                        :
                                                               :  Case No. 1:19-cv-07627
        -against-                                     :
                                                               :  **COMPLAINT**
MACDONALD-MILLER FACILITY                                      :  **FOR DECLARATORY RELIEF**
SOLUTIONS, INC.,                                               :
                                                               :
            Defendant.                        :
                                                               :
---------------------------------------------------------------X

Plaintiff, BERKLEY ASSURANCE COMPANY, by and through its attorneys, Duane Morris LLP, as and for its Complaint against Defendant, MACDONALD-MILLER FACILITY SOLUTIONS, INC., hereby alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, to determine the rights and duties, if any, between Berkley Assurance Company and MacDonald-Miller Facility Solutions, Inc., as set forth more fully below. Such relief is requested due to the existence of an actual controversy between the parties. Berkley Assurance Company contends an actual controversy exists as to the law which governs the subject insurance policy, as well as to Berkley Assurance Company's obligations to defend MacDonald-Miller Facility Solutions, Inc. Specifically, Berkley Assurance Company seeks a declaration that New York law governs all of Berkley's obligations arising from the subject insurance policy, and that Berkley Assurance Company did not, and currently does not, have a duty to defend MacDonald-Miller Facility Solutions, Inc. for claims made against MacDonald-

Miller Facility Solutions, Inc. related to the following lawsuit: *Sixth & Lenora Apartments, LLC v. Aquatherm GmbH, et al.*, Case No. 17-2-220015-8, King County Superior Court, Washington.

## JURISDICTION AND VENUE

2. Plaintiff Berkley Assurance Company ("Berkley") is, and at all times relevant herein was, a statutory insurance company, which is domiciled in Iowa with its principal place of business in Scottsdale, Arizona.

3. On information and belief, Defendant MacDonald-Miller Facility Solutions, Inc. ("MMFS") is, and at all times relevant herein was, a corporation incorporated under the laws of the State of Washington, with its principal place of business located in Seattle, Washington.

4. Berkley is not a citizen of the same state as MMFS, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees, and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. section 1332.

5. This Court is a proper venue for this action under 28 U.S.C. section 1391 because MMFS has consented to and is subject to personal jurisdiction in this District by agreement of the parties pursuant to the terms of the subject insurance policy issued by Berkley to MMFS. That policy contains the following provisions:

> **O.** **Jurisdiction and Venue** -- It is agreed that, in the event of any dispute arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, and all forms of contractual, tort and statutory claims, you and we will submit to the jurisdiction of any court (State or Federal) in New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of your or our right to remove an action to the United States District Court, regardless of the jurisdiction in which an action is commenced.

## GENERAL ALLEGATIONS

### The Policy

6.      Berkley issued a Contractor's Perform Policy to MMFS pursuant to policy no. PCADB-5001463-1216, effective December 31, 2016 to December 31, 2017 (the "Policy"). (*See* Exhibit A attached.)

7.      The Policy contains a Designated Construction Project Aggregate Limit Endorsement which sets a per project aggregate limit of $1,000,000 for each type of coverage under the Policy, and a per project aggregate limit of $1,000,000 for all coverages combined, after which the Policy has limits of liability of $5,000,000 for each Claim, $5,000,000 in the aggregate for each coverage, and an aggregate limit of $5,000,000 for all coverages combined.

8.      Coverage B of the Policy is for Professional Liability and provides as follows:

> We will defend you against any **Professional Claim** (as provided in Section III.A. of this Policy) and pay on your behalf all **Damages** and **Claim Expense** for that **Professional Claim** in excess of any applicable Self-Insured Retention, provided that:
>
> 1. the **Professional Claim** arises out of an actual or alleged negligent act, error or omission in the rendering of or failure to render **Professional Services** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and
>
> 2. the **Professional Claim** is first made against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and
>
> 3. prior to the effective date of the first policy insuring this type of **Professional Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances which could give rise to a **Professional Claim**.

9.      The Policy sets forth the following definitions:

> **C. Claim** means **Professional Claim**, **Pollution Claim**, **Cyber Claim**, and **Media and Personal Injury Claim.**
>
> **D. Claim Expense** means reasonable and necessary fees and costs incurred by us to investigate and defend any **Claim** for which coverage is provided under this

policy, including fees and costs charged by adjusters appointed by us to investigate a **Claim**. **Claim Expense** includes reasonable and necessary fees in defending such a **Claim**, for attorneys, investigators, arbitrators, mediators, consultants and expert testimony, as well as court and arbitration costs and expenses, but shall not include any remuneration, salaries, regular or overtime wages, benefits, fees or other payment of directors, officers, managers and employees of you or us, or fees and expenses of independent adjusters. **Claim Expense** also includes premiums for the covered portion of appeal bonds, attachment bonds or any similar bonds; however, we are not obligated to apply for, secure or furnish any such bond.

…

**J. Damages** mean any amounts you are legally obligated to pay.

…

**Q. Loss** means **Protective Loss**, **Third Party Loss**, **Mitigation Cost** and any other amount to which you are entitled under any of the insuring agreements described in the Supplemental Coverages Section of this Policy.

…

**GG. Professional Claim** means a written demand, demand for arbitration or mediation or suit made against you seeking **Damages** or correction of **Professional Services** and alleging a negligent act, error or omission in the rendering of or failure to render **Professional Services**.

**HH. Professional Services** means:

1. Construction Management, Program Management, Project Management, Owner's Representation, Property Management, Real Estate Brokerage/Agency, Property Development, Lease Brokering, any delegated design responsibility or design assist services, including but not limited to constructability reviews or value engineering; or

2. architecture; engineering; contract administration as part of design; sprinkler design; fire protection design; life safety design; mechanical, electrical or security systems design; light use, acoustical or signage design; landscaping design; surveying; quantity surveying; project accounting, quality control reviews, assist or documentation, material testing; cost consulting, economic, feasibility, technical consulting or technical studies or opinions, or scientific reviews; software design for the purpose of operating or maintaining any building system; interior design or space planning services; or design services to support Leadership in Energy and Environmental Design (LEED) certification for a project; or

3. professional services with respect to any Building Information Modeling (BIM) systems, including but not limited to modification, alteration, transfer, protection, manipulation, use, or misuse thereof, or design assist system or

4

    program, and the foregoing within Integrated Project Delivery (IPD), Public-Private Partnership projects (P3s), or Lean Project Delivery System (LPDS); or

4. environmental consulting, environmental engineering, environmental site assessment, remedial investigations, feasibility studies, remedial design, environmental monitoring, testing and sampling, remedial oversight and management, ecological studies, environmental training, industrial hygiene, forensic inspections and expert witness services; or

5. ordinary technology services utilized in the performance of the Professional Services described above. Such technology services include the design, development, programming, analysis, training, use, hosting, management, support, and maintenance of any software, database, internet service, or website.

…

**LL. Recoverable Insurance** means:

1. all available liability insurance providing applicable coverage to any **Responsible Entity** or any person or entity for which the **Responsible Entity** is responsible; or

2. in the event the **Protective Claim** is made against a **Responsible Entity** in whose favor you have granted a Limitation of Liability permitted by this Policy, such Limitation of Liability.

…

**PP. Third Party Loss** means the total of all **Damages** and **Pollution Loss** you are legally obligated to pay, and all related **Claim Expense**.

10.     Section VI. of the Policy is entitled "LIMITS OF LIABILITY AND SELF-INSURED RETENTION" and provides in relevant part:

**B. Self-Insured Retention**

The Self-Insured Retention amount stated in Item 5.A. of the Declarations applies to each **Claim** or **First Party Claim**, if applicable. The Self-Insured Retention amount stated in Item 5.B. of the Declarations is the most you shall pay for the sum of all of your Self-Insured Retention obligations arising out of all **Claims** or **First Party Claims** under each respective coverage for the Policy, if applicable, provided that in no event shall your Self-Insured Retention obligation be less than the amount state in Item 5.C. of the Declarations for any **Claim** or **First Party Claim** under each respective coverage. The Self-Insured Retention amount shall be paid by you before we pay any **Loss**, though any payments made by any

5

**Recoverable Insurance** also implicated by the **Claim** or **First Party Claim** shall serve to reduce your Self-Insured Retention obligation. Our Limits of Liability set forth in Item 4. of the Declarations are in addition to and in excess of the Self-Insured Retention amount. No Self-Insured Retention amount shall apply with respect to the Supplemental Coverages provided by the Policy, except for Supplemental Coverage H.

Emergency Expense. If a **Claim** arising out of the same set of circumstances for which we have paid **Mitigation Cost** is made, then any amounts paid under the Self-Insured Retention for such **Mitigation Cost** shall reduce the Self-Insured Retention for that **Claim**.

**Mediation** Credit: If you and we agree beforehand to attempt to resolve a **Claim** or **First Party Claim** at **Mediation**, and if you and we resolve such **Claim** or **First Party Claim** by such **Mediation**, your Self-Insured Retention obligation for such **Claim** or **First Party Claim** will be reduced by 50%, subject to a maximum reduction of $25,000.

11. Section XI. of the Policy is entitled "CONDITIONS" and provides in relevant part as follows:

    **M.**     **Other Insurance** -- This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy number in this Policy's Declarations. When any other insurance has a duty to defend a **Claim**, we will have no duty to defend the **Claim**; if no such other insurance defends the **Claim**, we will have the right but not the duty to defend the **Claim**.

        Under Coverage C only, when you are required by written contract, written agreement, or permit, executed prior to when the **Pollution Claim** was first made, to include any person or entity as an additional **Insured**, such coverage will be provided on a primary and non-contributory basis to the extent so required.

    **N.**     **Choice of Law** -- All matters arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, all forms of contractual, tort and statutory claims, and all remedies and entitlement to costs or attorneys' fees in a dispute over any of the foregoing, shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

    **O.**     **Jurisdiction and Venue** -- It is agreed that, in the event of any dispute arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and

enforcement of this Policy, and all forms of contractual, tort and statutory claims, you and we will submit to the jurisdiction of any court (State or Federal) in New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of your or our right to remove an action to the United States District Court, regardless of the jurisdiction in which an action is commenced.

### The Subject Claim

12. On information and belief, Berkley understands that Sixth & Lenora Apartments, LLC ("S&L"), alleges that the domestic plumbing system installed in S&L's real property, the Via6 Apartments located in Seattle, Washington (the "Project"), and in particular the "Aquatherm Piping Product" used therein, is defective and has resulted in physical damage and other damages at the Project (the "Claim").

13. On July 28, 2017, S&L filed a Complaint against several entities that allegedly worked on the construction of the Project, thereby commencing a lawsuit entitled *Sixth & Lenora Apartments, LLC v. Aquatherm GmbH, et al.*, Case No. 17-2-220015-8, King County Superior Court, Washington (the "Lawsuit"). Among the parties initially sued in the Lawsuit, S&L named Aquatherm GmbH and Aquatherm L.P. for their alleged role in manufacturing the Aquatherm Piping Product. In part, the Lawsuit alleges that the Aquatherm Piping Product was defective, and S&L asserted claims for negligence, strict liability, negligent design, errors and omissions, failure to adhere to professional standards, failure to manufacture a product that was reasonably safe, breach of contractual duties, breach of warranties of design/workmanship, and breaches of express and implied warranties. MMFS was not named in the initial Complaint filed by S&L.

14. On September 28, 2017, Aquatherm L.P. filed a Third Party Complaint in the Lawsuit against MMFS, among others. Therein, Aquatherm L.P. alleged that MMFS was retained to install, design, operate, and maintain the domestic plumbing system at the Project, but

7

was negligent in doing so. Aquatherm L.P. alleges that MMFS's faulty and negligent installation, design, operation, and maintenance of the domestic plumbing system caused the damages that S&L has alleged were caused by Aquatherm L.P. As a result, Aquatherm L.P. asserted a claim for contribution against MMFS in the Third Party Complaint. Aquatherm L.P. has since amended the Third Party Complaint, and has asserted claims of negligence, implied indemnity, and violation of Washington's Consumer Protection Act ("CPA") against MMFS.

15. On December 27, 2017, S&L filed an Amended Complaint in the Lawsuit wherein MMFS was named as a defendant. In part, S&L alleges that MMFS failed to properly install, design, operate, and maintain the domestic plumbing system at the Project, including an alleged failure to properly install the Aquatherm Piping Product. S&L further alleges that it entered into a "Service Contract" with MMFS on or about February 15, 2013, wherein MMFS was obligated to maintain, service, inspect, and/or repair the mechanical HVAC equipment at the Project, including the domestic plumbing system. S&L alleges that MMFS breached that Service Contract through its negligence by, in part, failing to properly perform its work and properly install, design, operate, and maintain the domestic plumbing system at the Project. S&L has asserted against MMFS claims for negligence, professional negligence, strict liability, negligent design, errors and omissions, failure to adhere to professional or industry standards, failure to manufacture a product that was reasonably safe, breach of contractual duties, breach(es) of warranties of design and/or workmanship, breach(es) of express and/or implied warranties, and intentional misrepresentation and/or concealment for alleged violations of the CPA. The Lawsuit seeks damages related to the alleged water damage and other alleged physical damage at the Project, alleged diminution in value, alleged loss of use, rent, and other business interruption damages, as well as costs for the repair of the alleged problems, and attorneys' fees.

16. On information and belief, Berkley understands that another insurer, Liberty Mutual Insurance Company ("Liberty"), issued a primary commercial general liability policy to MMFS which provides primary coverage for the Claim.

17. On information and belief, at all relevant times MMFS has been defended against the Claim Lawsuit by defense counsel provided by Liberty, pursuant to Liberty's duty to defend.

18. Berkley has issued several reservation of rights correspondences to MMFS, dated September 7, 2018, May 6, 2019, and June 7, 2019. Therein, Berkley reserved its rights and advised MMFS that, to the extent professional negligence is established against MMFS, the Professional Liability part of the Berkley Policy may provide indemnity coverage for the Claim. However, pursuant to the terms of the Other Insurance provision in the Berkley Policy and due to Liberty providing a defense, Berkley would not be contributing toward the defense at this time.

## FIRST COUNT

**(Declaratory Judgment – New York Law Applies to Berkley's Obligations)**

19. Berkley refers to and incorporates herein by reference paragraphs 1 through 18 inclusive, as though set forth in full herein.

20. The Policy contains a Choice of Law provision which requires that "All matters arising from or related to this Policy … shall be determined in accordance with the law and practice of the State of New York[.]"

21. Berkley contends that New York law governs the interpretation and performance of the Policy, and all matters arising from or related to the Policy, based on the aforementioned choice of law provision.

22. MMFS contends that Washington law applies to Berkley's obligations pursuant to the policy, including without limitation to the duty to defend, the duty of good faith and fair dealing, and the duties under statutes and regulations with respect to insurance claims practices.

23.     An actual controversy exists between Berkley, on the one hand, and MMFS, on the other hand, that involves the obligations of Berkley arising from or related to the Policy under New York law, with respect to MMFS and the Claim.  This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

24.     Berkley desires a judicial determination as to the governing law for its obligations arising from and related to the Policy as it relates to MMFS and the Claim.  Specifically, Berkley desires a judicial declaration that New York law applies to the interpretation and performance of the Policy, and to all matters arising from or related to the Policy, pursuant to the Choice of Law provision in the Policy.

## SECOND COUNT

**(Declaratory Judgment – No Duty to Defend or Pay Defense Costs)**

25.     Berkley refers to and incorporates herein by reference paragraphs 1 through 24 inclusive, as though set forth in full herein.

26.     The Policy contains an Other Insurance provision that provides, in part, "This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you …. When any other insurance has a duty to defend a Claim, we will have no duty to defend the Claim; if no such other insurance defends the Claim, we will have the right but not the duty to defend the Claim."

27.     On information and belief, at all relevant times Liberty has acknowledged that it provides valid and collectible liability insurance available to MMFS for the Claim and has a duty to defend, and Berkley is informed and believes that MMFS has been defended against the Claim by defense counsel provided by Liberty.

28. On information and belief, MMFS has not exhausted the Self-Insured Retention by payment made by MMFS or by Recoverable Insurance as that term is defined in the Policy.

29. Berkley contends that it did not have an obligation to defend MMFS or to pay its defense costs, and does not currently have an obligation to defend MMFS or to pay its defense costs, against the Claim, based upon the terms of the Other Insurance provision, Liberty's duty to defend and the lack of satisfaction of the Policy's Self-Insured Retention.

30. MMFS contends that Berkley has had and currently has a duty to defend MMFS.

31. An actual controversy exists between Berkley, on the one hand, and MMFS, on the other hand, that involves the rights and obligations of Berkley to any past or present duty to defend MMFS against the Claim. This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

32. Berkley desires a judicial determination of its rights and duties with respect to Berkley's duty, if any, to defend MMFS against the Claim. Specifically, Berkley desires a judicial declaration that Berkley did not have, and currently does not have, a duty to defend MMFS against the Claim or pay its defense costs against the Claim.

## **PRAYER**

WHEREFORE, Berkley prays for judgment as follows:

1. That this Court determine and adjudicate the rights, duties and obligations of the parties with respect to the policy of insurance described in this Complaint and the Claim;

2. On the First Count: for a judicial declaration that New York law applies to and governs the Policy as it relates to MMFS and the Claim, including all of Berkley's obligations arising from or related to the Policy;

3. On the Second Count: for a judicial declaration that Berkley did not, and currently does not, have a duty to defend MMFS or pay its defense costs against the Claim;

4. For expenses and costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 14, 2019

**DUANE MORRIS LLP**

Attorneys for Plaintiff Berkley Assurance Company

By: *s/Amy C. Gross*

Amy C. Gross
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
acgross@duanemorris.com

**LOCAL CIV. RULE 1.6 CERTIFICATION**

I hereby certify that the matter in controversy is not, to my knowledge, the subject of any other pending action or arbitration proceeding.

*s/Amy C. Gross*

DM1\9870408.3