UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERKLEY ASSURANCE COMPANY,
                           Plaintiff,

-v-

MACDONALD-MILLER FACILITY
SOLUTIONS, INC. et al.,
                           Defendants.

19-CV-7627 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This case involves an insurance coverage dispute that is the subject of two competing lawsuits for declaratory relief in two different federal district courts. Because this action was filed before the other action, and because no special circumstances counsel against applying the well-established presumption that only the first-filed action should proceed to the merits, the Court concludes that this action shall receive priority over the later-filed action.

**I.    Background**

    The following facts are taken from the operative complaint. (*See* Dkt. No. 9 ("Compl.").)

    Sixth & Lenora Apartments, LLC owns Via6 Apartments, a property located in Seattle, Washington. (Compl. ¶ 14.) In 2017, Sixth & Lenora Apartments filed suit in Washington state court against various entities, alleging that the plumbing system installed at Via6 Apartments was defective. (Compl. ¶ 15.) In an amended complaint, Sixth & Lenora Apartments asserted claims against Defendant MacDonald-Miller Facility Solutions, Inc., alleging that MacDonald-Miller was retained to install, design, operate, and maintain the plumbing system and did so negligently. (Compl. ¶ 17.)

    MacDonald-Miller is covered by a primary commercial general-liability policy issued by Defendants Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation

1

(collectively, Liberty).  (Compl. ¶ 18.)  Accordingly, Liberty has provided counsel to defend MacDonald-Miller in the underlying state-court action.  (Compl. ¶ 19.)

MacDonald-Miller also holds a professional-liability policy issued by Plaintiff Berkley Assurance Company.  (Compl. ¶¶ 8, 10.)  The policy contains a choice-of-law provision:  "All matters arising from or relating to this Policy, including without limitation questions relating to the validity, interpretation, performance, and enforcement of this Policy . . . shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)."  (Compl. ¶ 13.)  The policy also contains a forum-selection clause:  "It is agreed that, in the event of any dispute arising from or related to this Policy . . . [MacDonald-Miller] and [Berkley] will submit to the jurisdiction of any court (State or Federal) in New York and will comply with all the requirements necessary to give such court jurisdiction."  (Compl. ¶ 13.)

Berkley has issued several letters to MacDonald-Miller advising that it has no duty to defend MacDonald-Miller in the underlying state-court action.  (Compl. ¶ 20.)  On August 15, 2019, Berkley brought this action, seeking a declaratory judgment that it has no duty to defend MacDonald-Miller in the state-court action.  (Compl. ¶¶ 27–34.)  Berkley also seeks a declaratory judgment that New York law governs the scope of Berkley's obligations.  (Compl. ¶¶ 21–26.)

On September 3, 2019, MacDonald-Miller filed suit against Berkley and Liberty in the United States District Court for the Western District of Washington.  *See* Complaint, *MacDonald-Miller Facility Solutions, Inc. v. Berkley Assurance Co.*, No. 19-CV-1404 (W.D. Wash. Sept. 3, 2019), ECF No. 1.  MacDonald-Miller seeks, among other things, a declaration

that Berkley is obligated to defend MacDonald-Miller in the underlying state-court action. *See id.* ¶¶ 28–29.

In response, Berkley moved in this Court for a preliminary injunction preventing MacDonald-Miller from further prosecuting the Washington declaratory judgment action. (Dkt. No. 26.) Oral argument on the motion was heard on November 18, 2019. Separately, MacDonald-Miller has moved in this Court to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (Dkt. No. 35.)

## II. Legal Standard

To obtain a preliminary injunction, a plaintiff must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir.2012).

## III. Discussion

Berkley moves to enjoin MacDonald-Miller from further prosecuting the action proceeding in federal court in Washington. MacDonald-Miller moves to dismiss for lack of personal jurisdiction and for failure to state a claim.

### A. Choice of Law

The parties first dispute whether New York or Washington law governs. (*See* Dkt. No. 37-2 at 10–14; Dkt. No. 36 at 10–15.) Although Berkley's policy contains a choice-of-law provision that selects New York law, MacDonald-Miller argues that the provision does not apply. (Dkt. No. 36 at 13–14.)

This Court sits in New York and therefore applies New York's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "When making a choice of law

determination in a contract case, New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation." *In re Gaston & Snow*, 243 F.3d 599, 607–08 (2d Cir. 2001). But under New York law, "[i]n the case of certain contracts covering high-value transactions" — *i.e.*, transactions covering at least $250,000 — "a choice of law clause selecting New York law will be honored regardless of the contacts between the state and the transaction." *Usach v. Tikhman*, No. 11-CV-954, 2011 WL 6106542, at *5 (S.D.N.Y. Dec. 7, 2011) (citing N.Y. Gen. Oblig. Law § 5-1401(1)).[1] MacDonald-Miller does not dispute that the insurance policy in this case clears the monetary threshold established by section 5-1401(1). (*See* Dkt. No. 36 at 13–14; Dkt. No. 47 at 8.) Thus, under section 5-1401(1), New York substantive law governs.

In response, MacDonald-Miller first argues that New York applies a "center of gravity" or "grouping of contacts" test for choice of law in contract cases like this one. (Dkt. No. 47 at 3–4.) That argument, however, simply ignores the effect of section 5-1401(1), which directs the courts to abjure a contacts analysis in cases that meet the monetary threshold. *See, e.g.*, *Ministers & Missionaries Ben. Bd. v. Snow*, 780 F.3d 150, 153 (2d Cir. 2015) ("[Section 5-1401(1)] expressly permits parties in contracts concerning amounts greater than $250,000 to

---

[1] Section 5-1401(1) provides:

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection (a) of section 1-301 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state.

N.Y. Gen. Oblig. Law § 5-1401(1).

4

select New York law as the governing law."). In such cases, the ordinary "center of gravity" analysis is irrelevant because New York law governs "whether or not [the] contract . . . bears a reasonable relation to [New York]." Gen. Oblig. § 5-1401(1).

MacDonald-Miller also argues that the policy's choice-of-law clause is void under *Washington* law. (Dkt. No. 36 at 10–13.) Under Washington law, no insurance contract with sufficient ties to the state of Washington "shall contain any condition, stipulation, or agreement . . . requiring it to be construed according to the laws of any other state." Wash. Rev. Code § 48.18.200(1). But under *Klaxon*, it is the choice-of-law regime of *New York*, not Washington, that controls the validity of the policy's choice-of-law clause. *See Klaxon*, 313 U.S. at 496. Thus, the controlling rule is section 5-1401 of New York's General Obligations Law, not section 48.18.200 of the Washington Code. And under section 5-1401, the policy's choice-of-law clause must be honored.

The Court concludes that the choice-of-law clause will be enforced and that the substantive law of New York will govern.

### B. Berkley's Motion for a Preliminary Injunction

Berkley moves to enjoin MacDonald-Miller under the first-filed rule. For the reasons that follow, this Court concludes that the first-filed rule applies and that this action will receive priority over the Washington action. The request for a preliminary injunction, however, is denied.

#### 1. The First-Filed Rule

Berkley seeks a preliminary injunction under the "established general rule" that when litigants have filed duplicative lawsuits in different federal fora, "the party filing later in time should be enjoined from further prosecution of h[er] suit." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 723 (2d Cir. 2010) (quoting *Martin v. Graybar Elec. Co.*,

266 F.2d 202, 204 (7th Cir. 1959)). Here, neither party disputes that this action and the Washington declaratory judgment action are duplicative of each other. (*See* Dkt. No. 37-2 at 7–8; Dkt. No. 36 at 15–17; Dkt. No. 47 at 6–8.) Only one of the two actions, then, should proceed to the merits. *See, e.g.*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.").

But first, there is an antecedent question: *which court* should decide where the case should proceed? Guided by the general practice of the federal courts, the courts of this district have adopted a "bright-line rule" that "[t]he court before which the first-filed action was brought determines which forum will hear the case." *MSK Ins., Ltd. v. Emp'rs Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) (footnote omitted); *see also Pem Am., Inc. v. Lambert*, No. 03-CV-3706, 2003 WL 22383369, at *2 (S.D.N.Y. Oct. 17, 2003) (collecting cases from this district). "[T]his bright-line rule . . . does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner." *Pem Am.*, 2003 WL 22383369, at *2. Accordingly, it is this Court — and not the Western District of Washington — that will make the choice whether this action or the Washington action should proceed.[2]

In the Second Circuit, that choice is governed by the "first-filed rule." Under this rule, "[w]here there are two competing lawsuits, the first suit should have priority." *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (alteration in original) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). The rule "embodies considerations of judicial administration and conservation of resources by

---

[2] Other district courts follow the same practice. *See Comcast Corp. v. Rovi Corp.*, No. 16-CV-3852, 2016 WL 4991625, at *3 n.3 (S.D.N.Y. Sept. 16, 2016) (collecting cases from other districts).

avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Id.* at 275 (internal quotation marks omitted) (quoting *First City*, 878 F.2d at 80). MacDonald-Miller does not contest that this action was the first-filed action. (*See* Dkt. No. 36 at 15–17.) Thus, under the first-filed rule, it is this action, and not the Washington action, that should receive priority.

The first-filed rule admits of two exceptions: the second-filed action will receive priority only if either (1) the "balance of convenience" or (2) "special circumstances" favor the second-filed action. *Id.* In this case, neither exception applies.

### a. The "Balance of Convenience" Exception

The analysis under the first exception — the "balance of convenience exception" — is "essentially the same as th[e] [analysis] considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Emp'rs Ins. of Wausau*, 522 F.3d at 275. Thus, the relevant factors are

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (alteration in original) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). The proper application of these otherwise familiar § 1404(a) factors, however, is fundamentally inflected by the presence of a valid forum-selection clause. In such cases, the parties have "waive[d] the right to challenge the preselected forum as inconvenient . . . for themselves or their witnesses." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 64 (2013). Accordingly, a

7

district court "may consider arguments about public-interest factors only,"[3] which will "rarely" override the weight given to the parties' choice of forum. *Id.* In short, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (alteration omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 478 U.S. 22, 33 (1988)). In this case, the insurance policy at issue contains a forum-selection clause providing that the parties "will submit to the jurisdiction of any court . . . in New York." (Compl. ¶ 11.) The § 1404(a) analysis, then, turns on the validity of that clause.

"The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). The analysis comprises four steps. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive . . . . Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause. . . . The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Id.* at 383–84 (citations omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The first and fourth steps implicate "questions of enforceability" that "are resolved under federal law." *Martinez*, 740 F.3d at 224. The second and third steps implicate "interpretive questions" that "are resolved under the substantive law designated in an otherwise

---

[3] "Public-interest factors . . . include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 n.6 (2013) (alteration in original) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

valid contractual choice-of-law clause." *Id.*; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Here, the parties dispute whether the forum-selection clause is properly considered part of the insurance policy. (*See* Dkt. No. 47 at 7 (arguing that the clause is "void *ab initio*" and was "never part of the insurance contract").) This is an *interpretive* dispute about the correct construction of the insurance policy under the third step of the analysis.[4] Accordingly, this Court "turn[s] to the body of law selected by the contracting parties" — that is, the law of New York. *Martinez*, 740 F.3d at 224.

Under New York law, forum-selection clauses are not "void *ab initio*." Rather, "in cases involving $1 million or more," New York law "contains a statutory mandate that a clause designating New York as the forum shall be enforceable . . . regardless of any inconvenience to the parties." *Nat'l Un. Fire Ins. Co. v. Worley*, 690 N.Y.S.2d 57, 59 (N.Y. App. Div. 1st Dep't 1999) (alterations omitted); *see* N.Y. Gen. Oblig. Law § 5-1402(1).[5] MacDonald-Miller does not

---

[4] Alternatively, the dispute might be characterized as one of enforceability under step four of the analysis. If so, however, the same result obtains. The relevant question under federal law is whether enforcement would "contravene[] a strong public policy of the forum state." *TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 285–86 (S.D.N.Y. 2016). And New York has no public policy against forum-selection clauses in insurance contracts.

[5] Section 5-1402(1) provides:

> [A]ny person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.

dispute that the insurance policy in this case clears the $1 million monetary threshold. (*See* Dkt. No. 36 at 20–22; Dkt. No. 47 at 12.) Thus, under New York law, the forum-selection clause is valid.

In response, MacDonald-Miller cites section 48.18.200 of the Washington Code, which provides: "No insurance contract delivered or issued for delivery in [Washington] and covering subjects located, resident, or to be performed in [Washington] shall contain any condition . . . depriving the courts of [Washington] of the jurisdiction of action against the insurer. Under the Washington statute, MacDonald-Miller argues, the contract should be construed to exclude the forum-selection clause. (Dkt. No. 47 at 7.) But MacDonald-Miller's reliance on section 48.18.200 of the Washington Code is unavailing for two reasons. First, the Washington statute is irrelevant to this analysis. Questions of contract construction and interpretation are governed by "the body of law selected by the contracting parties." *Martinez*, 740 F.3d at 224. Here, that law is the law of New York. The law of Washington is beside the point.

Second, MacDonald-Miller simply misreads the statute. Even if the Washington statute were relevant, its text addresses only those contract provisions that "deprive the courts of [Washington] of . . . *jurisdiction*." Wash. Rev. Code § 48.18.200(1)(b) (emphasis added). As the Supreme Court of Washington has determined, the statute "protect[s] the right of policyholders to bring an original 'action against the insurer' in the courts of this state." *State v. James River Ins. Co.*, 292 P.3d 118, 123 (Wash. 2013) (en banc). This forum-selection clause, however, is permissive, not mandatory. The clause provides that the parties "agree[] [to] submit to the jurisdiction of any court . . . in New York." (Compl. ¶ 13.) Thus, the clause does not "require[] [the parties] to bring any dispute to the designated forum"; it merely "permit[s] [them]

---

N.Y. Gen. Oblig. Law § 5-1402(1).

to do so." *Martinez*, 740 F.3d at 217. In no sense, then, can this forum-selection clause be understood to deprive the courts of Washington of jurisdiction.[6]

MacDonald-Miller's reliance on two cases from the Western District of Washington is also unavailing. *See Nat'l Frozen Foods Corp. v. Berkley Assurance Co.*, No. 17-CV-339, 2017 WL 3781706 (W.D. Wash. Aug. 31, 2017); *Jorgenson Forge Corp. v. Ill. Union Ins. Co.*, No. 13-CV-1458, 2014 WL 12103362 (W.D. Wash. June 17, 2014). In both cases, the district court applied section 48.18.200 of the Washington Code to invalidate a forum-selection clause. *See Nat'l Frozen Foods*, 2017 WL 3781706, at *4; *Jorgenson*, 2014 WL 12103362, at *3. But the crucial distinction is that the district court in each case applied Washington state law to the question of contract construction. *See Jorgenson*, 2014 WL 12103362, at *2 (applying the "state law [of Washington] to the interpretation of insurance contract clauses"); *see also Nat'l Frozen Foods*, 2017 WL 3781706, at *4 ("The Court finds *Jorgenson* on point . . . .").[7] Here, by contrast, the governing law is the law of New York. *See Martinez*, 740 F.3d at 220 ("[C]ourts must apply the law contractually chosen by the parties to interpret the [forum-selection] clause."). It is unremarkable, then, that section 48.18.200 of the Washington Code controls the outcome in cases like *National Frozen Foods* and *Jorgenson*, whereas section 5-1402 of New York's General Obligations Law controls the outcome here.

---

[6] It should also be noted that a forum-selection clause — even if mandatory — "does not deprive [another] forum of jurisdiction or venue." *Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 408 (S.D.N.Y. 2000); *cf. Atl. Marine*, 571 U.S. at 59 (holding that "a forum-selection clause does not render venue in a court 'wrong' or 'improper'").

[7] The court in neither case directly addressed the issue of choice of law. *See, e.g.*, *Jorgenson*, 2014 WL 12103362, at *4 (noting that the court reached its decision "[w]ithout deciding . . . whether the choice of law clause will survive").

11

Under New York law, then, the forum-selection clause is valid. And "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Alt. Marine*, 571 U.S. at 63 (alteration omitted) (quoting *Stewart Org.*, 478 U.S. at 33). This case is no exception. Thus, this Court concludes that the balance of the § 1404(a) factors favors the first-filed forum.

### b. The "Special Circumstances" Exception

The second exception — the "special circumstances" exception — is likewise inapplicable. There are only a "limited number of such circumstances." *Emp'rs Ins. of Wausau*, 522 F.3d at 275. One circumstance is where the first-filed lawsuit is an improper anticipatory declaratory judgment action. *See id.* MacDonald-Miller argues that this is such a case because Berkley "br[ought] this action in response to a fear of imminent litigation." (Dkt. No. 47 at 7.) But that argument understands the exception too broadly. Generally, "[a] party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994). Thus, "in order for a declaratory judgment action to be [improperly] anticipatory, it must be filed in response to a *direct* threat of litigation that gives *specific warnings* as to deadlines and subsequent legal action." *Emp'rs Ins. of Wausau*, 522 F.3d at 276 (emphases added).

MacDonald-Miller argues that it made such a threat to Berkley during a mediation that occurred among the parties to the underlying state-court action. (Dkt. No. 47 at 7.) Specifically, MacDonald-Miller points to an email it sent to Berkley's counsel in which it gave Berkley "30 minutes to match the coverage offered by Liberty or suffer the consequences of Washington's coverage law." (*Id.*) But nowhere in that email does MacDonald-Miller indicate "a firm

12

intention to commence an action." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001); *see* Dkt. No. 46-3 at 1; *see also J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995) (requiring a statement "of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit"). And MacDonald-Miller identifies no other communication to Berkley in which it directly threatened litigation. Without such a threat from MacDonald-Miller, Berkley's commencement of a declaratory judgment action does not constitute an improper anticipatory filing that triggers an exception to the first-filed rule. *See Reliance Ins.*, 155 F. Supp. 2d at 55; *800-Flowers*, 860 F. Supp. at 132–33.

The other "special circumstances" exception applies if "forum shopping *alone* motivated the choice of the situs for the first suit." *Emp'rs Ins. of Wausau*, 522 F.3d at 276 (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)). But this exception cannot apply "[i]n light of the parties' prior consent to jurisdiction in the courts of New York." *Reliance Ins.*, 155 F. Supp. 2d at 55. "[W]hether or not the [forum-selection] clause is enforceable, there is no basis for a claim of forum shopping" if a litigant simply seeks to commence litigation in a forum previously selected by the parties. *Id.* (citing *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997)).

Neither exception to the first-filed rule applies. The Court therefore concludes that this action, and not the Washington action, should receive priority.

### 2. Remedy

A separate issue is that of remedy. It is "well-established" that when the first-filed rule applies, "the [first-filed] court *may* enjoin the suitor in the more recently commenced case from taking any further action." *AEP Energy Servs.*, 626 F.3d at 722–23 (emphasis added) (quoting *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961)). This procedure, however, "is not mandatory." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

The Court declines to enjoin MacDonald-Miller from taking any further action in the parallel Washington action because an injunction is unnecessary to ensure that this suit has priority. There is every reason to believe that the Washington district court will stay its own proceedings. "Even in the absence of . . . an injunction . . . the second court may be bound to stay its consideration of an action . . . ." *AEP Energy Servs.*, 626 F.3d at 723. "A district court can go 'beyond the allowable bounds of discretion' when it refuses to stay or dismiss a duplicative suit." *Adam*, 950 F.2d at 92 (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1204 (2d Cir. 1970) (Friendly, J.)). And "[t]he same policies" of avoiding duplicative litigation and promoting judicial economy "are furthered by the second court's exercising judicial self-restraint." *Id.*

The Court concludes that this action shall have priority over the Washington action. Berkley's motion for a preliminary injunction, however, is denied.[8]

### C. MacDonald-Miller's Motions to Dismiss

MacDonald-Miller moves to dismiss for lack of personal jurisdiction and for failure to state a claim. (Dkt. No. 35; Dkt. No. 36 at 20.)

MacDonald-Miller first avers that this Court lacks personal jurisdiction because of an absence of minimum contacts between MacDonald-Miller and New York. (Dkt. No. 36 at 20.) But MacDonald-Miller has consented to personal jurisdiction through the forum-selection clause. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *see also Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 334 (S.D.N.Y. 2018) ("[P]arties to [a] forum

---

[8] The denial of Berkley's motion for a preliminary injunction is without prejudice to renewal in the event that injunctive relief becomes necessary to ensure this suit's priority.

selection clause . . . have waived any objection to personal jurisdiction."). MacDonald-Miller's motion under Federal Rule of Civil Procedure 12(b)(2) is therefore denied.

MacDonald-Miller also asserts that Berkley's claims fail as a matter of law because "[section] 48.18.200 [of the Washington Code] and its progeny bar this action from proceeding." (Dkt. No. 36 at 20.) For the reasons stated above, *see supra* Section III.B.1, that is incorrect. MacDonald-Miller's motion under Federal Rule of Civil Procedure 12(b)(6) is also denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED. Defendant MacDonald-Miller's motion to dismiss for lack of personal jurisdiction is DENIED. Defendant MacDonald-Miller's motion to dismiss for failure to state a claim is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 34 and 35.

SO ORDERED.

Dated: December 16, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge