UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BERKLEY ASSURANCE COMPANY,
                              Plaintiff,

-v-

MACDONALD-MILLER CACILITY SOLUTIONS *et. al*,
                              Defendants.

---

19-CV-7627 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This case involves a request for a declaratory judgment in an insurance coverage dispute between Berkley Assurance Company ("Berkley") and Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation ("Liberty"). Berkley requests a declaratory judgment that it is not required to reimburse Liberty for costs incurred in Liberty's defense of their mutual insured, MacDonald-Miller Facility Solutions Inc. ("MMFS"), while Liberty requests a declaratory judgment that Berkley is required to reimburse Liberty and thus split the costs incurred in the defense of MMFS in the underlying action. For the reasons that follow, Berkley's motion is granted and Liberty's is denied.

**I.    Background**[1]

Berkley issued to MMFS a Professional Liability policy. (*See* ECF No. 95-1.) This policy includes an "other insurance" provision that reads as follows:

> This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this Policy by reference

---

[1] The facts here are undisputed unless otherwise noted and taken from the parties' respective statements of undisputed facts and responses. (*See* ECF Nos. 88, 89, 93, 98.)

1

> in such other policy to the Policy number in this Policy's Declarations. When any other insurance has a duty to defend a **Claim**, we will have no duty to defend the **Claim**; if no such other insurance defends the **Claim**, we will have the right but not the duty to defend the **Claim**.

(ECF No. 95-1 at 62.)

> The policy defines "**Claim**" as "**Professional Claim**, **Pollution Claim**, **Cyber Claim**, and **Media and Personal Injury Claim**." (ECF No. 95-1 at 47.) Relevant here, it defines "**Professional Claim**" to mean "a written demand, demand for arbitration or mediation or suit made against you seeking **Damages** or correction of **Professional Services** and alleging a negligent act, error, or omission in the rendering of or failure to render **Professional Services**." (ECF No. 95-1 at 53.) "**Damages**" is defined as "any amounts you are legally obligated to pay."

(ECF No. 95-1 at 48.)

Liberty issued to MMFS a Commercial General Liability policy ("CGL"). (*See* ECF No. 88-1.) This policy's "other insurance" provision reads:

> If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:
>
> a. Primary Insurance: This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below."

(ECF No. 88-1 at 36.)

Paragraph b., referenced above, is replaced by Endorsement LC 24 32 10 13, which reads:

> b. Excess Insurance:
> (1) This Insurance is excess over:
>     (a)-(c) [a series of specific exceptions that are not applicable here]
> (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If

>       no other insurer defends, we will undertake to do so, but we will be
>       entitled to the insured's rights against all those other insurers.

(ECF No. 88-1 at 67.)

Both parties agree that their respective policies insure different losses; that is, Berkley's Professional Liability coverage does not cover the same loss as Liberty's Commercial General Liability policy, which in turn does not cover professional liability losses. The underlying action included claims touching on both property damage (covered by Liberty's policy) and professional liability (falling under Berkley's policy), but not any claims that the policies might cover concurrently.[2] Liberty initially and primarily defended MMFS in the underlying action, though later in the litigation Berkley also provided its own attorneys under a reservation of rights. That action settled, and Berkley and Liberty split the settlement equally. (*See* ECF No. 97 at 1; ECF No. 90 at 11 – 14.)

**II.    Legal Standard**

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S.

---

[2] For more background on the underlying action, see this Court's Opinion and Order at ECF No. 48.

317, 322–23 (1986)). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)). In cases involving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (citation omitted).

Summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). Under New York Law, "[t]he determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *In re Prudential Lines Inc.*, 158 F.3d 65, 77 (2d Cir. 1998) (citation omitted); *accord L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010) (collecting cases). Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assurance Co.,* 704 F.3d 89, 99 (2d Cir. 2012) (citation and internal quotation marks omitted). "[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." *L. Debenture Tr. Co.*, 595 F.3d at 467(quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 300 (2d Cir. 1996)).

4

### III.     Discussion

#### A.     The "Other Insured" Clauses

This case turns on the interpretation and application of the "other insured" provisions in the Berkley and Liberty policies. It is well established under New York law that "insurance policies are interpreted according to general rules of contract interpretation."[3] *Olin Corp*, 704 F.3d at 98. Courts must "give effect to the intent of the parties as expressed in the clear language of the contract." *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.,* 702 F.3d 118, 122 (2d Cir. 2012) (quoting *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.,* 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks omitted)). The "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and ellipsis omitted).

These principles govern the interpretation of the rights and obligations of co-insurers. *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 65 A.D.3d 12, 19, 878 N.Y.S.2d 339, 345 (2009) (explaining that the court should compare respective insurance clauses to determine the insurers' respective obligations). Here, Berkley contends that the specific language of the "other insurance" clauses in the two contracts demonstrates that because Liberty had a duty to defend the entire action, Berkley had no duty to defend and therefore no duty to share the costs of such defense with Liberty.

Berkley primarily relies on *Fieldston Property Owners Association Incorporated v. Hermitage Insurance Company*, 16 N.Y.3d 257 (2011) ("*Fieldston*"). The facts in *Fieldston* have two key similarities to the case here. First, the two insurers, which respectively provided a

---

[3] New York Law governs this action. (*See* ECF No. 48.)

D&O policy ("Insurer A") and a CGL Policy ("Insurer B") each had "other insurance" clauses similar to those here, as shown below:

| **Berkley Other Insurance Clause** | *Fieldston* **Other Insurance Clause A** |
|---|---|
| This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy number in this Policy's Declarations. When any other insurance has a duty to defend a Claim, we will have no duty to defend the Claim; if no such other insurance defends the Claim, we will have the right but not the duty to defend the Claim. | If any Loss[4] arising from any claim made against the Insured(s) is insured under any other valid policy(ies) prior or current, then this policy shall cover such Loss, subject to its limitations, conditions, provisions, and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits provided in this policy. *Fieldston*, 16 N.Y.3d at 261. |
| **Liberty Other Insurance Clause** | *Fieldston* **Other Insurance Clause B** |
| If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows: a. Primary Insurance: This insurance is primary except when [certain exceptions not relevant here apply]. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. | If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows: a. Primary Insurance: This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. *Fieldston*, 16 N.Y.3d at 260. |

Second, *Fieldston* also implicated the CGL insurer's duty to defend. An insurer's duty to defend its insured "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fieldston*, 16 N.Y.3d at

---

[4] The policy defined "Loss" to mean "the total amount which the Insured(s) becomes legally obligated to pay on account of all claims made against it for Wrongful Acts with respect to which coverage hereunder applies, including . . . Defense Costs." *Fieldston*, 16 N.Y.3d at 261.

257 (quoting *Fitzpatrick v American Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991)).  This duty is "liberally construed and is broader than the duty to indemnify, in order to ensure an adequate defense of the insured, without regard to the insured's ultimate likelihood of prevailing on the merits of a claim." *Id.* at 264.  Under this duty, if "*any* of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.* (citing *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).  Whether the complaint also asserts additional claims outside the policy's general coverage is "immaterial." *Id.*

In *Fieldston*, both insurers conceded that at least one of the claims in the underlying actions could possibly fall under either policy. *Id.* at 264.  Accordingly, the court concluded that under the unambiguous terms of the "other insurance" clauses, Insurer A's policy was excess and Insurer B's was primary, as there was "other insurance" available under the terms of Insurer A's policy.  As a result, Insurer B had the obligation to defend the action without contribution from Insurer A.[5]  *Id.* at 265.  *See also Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am.,* 881 F. Supp. 2d 570, 575 (S.D.N.Y. 2012) (following *Fieldston*);  *Fireman's Ins. Co. of Washington, D.C. v. Federal Ins. Co.*, 233 A.D. 2d 193, 649 N.Y.S. 2d 700 (1st Dep't 1996), *leave to appeal denied*, 90 N.Y. 2d 803, 661 N.Y.S. 2d 179 (1997) (explaining that where a "loss, including defense costs" could be covered by another policy, the "other insurance" clause of the applicable D&O's Liability policy rendered it excess to the primary CGL policy, which had a duty to defend the whole action under the law, including claims covered under the D&O policy).

---

[5] "[I]n the context of primary and excess insurance," the court in *Fieldston* explained, "a primary insurer has the primary duty to defend on behalf of its insured, and it generally has no entitlement to contribution from an excess insurer.  Although an excess insurance carrier may elect to participate in an insured's defense to protect its interest, it has no obligation to do so." *Id.* at 265 (internal quotation marks and citations omitted).

7

Berkley argues that here, as in *Fieldston*, Liberty likewise had a duty to defend the entire claim because there was a possibility that some of the claims arose from events covered under Liberty's policy. Berkley then argues that as a result of Liberty's duty to defend all the claims — including any professional liability claims —Berkley's "other insurance" provision renders Berkley's coverage excess, so that it has no duty to defend or reimburse.

Liberty does not contest its broad duty to defend. Liberty argues, however, that *Fieldston* is distinguishable on its facts and that the Court should instead follow *Greater New York Mutual Inurance Company v. Continental Casualty Company,* No. 19 Civ. 3268, 2020 WL 5370419 (S.D.N.Y. Sept. 8, 2020). There, the two insurance policies at issue were again like those here, and the duty to defend required the CGL insurer ("Insurer D") to defend the entire action, including some claims that fell under the policy provided by the D&O insurer ("Insurer C").

| **Berkley Other Insurance Clause** | ***Greater N.Y.*** **Other Insurance Clause C** |
|---|---|
| This Policy is excess over the Self-Insured Retention and any other valid and collectible liability insurance available to you, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, self-insured or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy number in this Policy's Declarations. When any other insurance has a duty to defend a Claim, we will have no duty to defend the Claim; if no such other insurance defends the Claim, we will have the right but not the duty to defend the Claim. | If any Loss[6] resulting from any Claim is insured under any other policies, this Policy shall apply only to the extent the Loss exceeds the amount paid under such other valid and collectible insurance whether such other valid and collectible insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other valid and collectible insurance is written only as specific excess insurance over this Policy. *Greater N.Y.*, 2020 WL 5370419 at *2. |
| **Liberty Other Insurance Clause** | ***Greater N.Y.*** **Other Insurance Clause D** |
| This insurance is primary except when [a number of conditions which are not relevant here occur]. If this insurance is primary, our | This insurance is primary except when [a number of conditions which are not relevant in this case occur.] If this insurance is |

---

[6] As in *Fieldston*, "Loss" was defined to include "Defense costs…on account of a *covered* claim." Claim was defined "in relation to a 'wrongful act'…defined in relation to an act by the insured in an *insured* capacity." *Greater N.Y.*, 2020 WL 5370419 at *6 (emphasis original).

8

| | |
|---|---|
| obligations are not affected unless any of the other insurance is also primary. | primary, our obligations are not affected unless any of the other insurance is also primary.  *Greater N.Y.* at *2. |

The court in *Greater New York* required the insurers to share the cost of their mutual insureds' defense.  It distinguished *Fieldston* because in *Fieldston*, both parties conceded that the underlying actions included one 'overlap' claim that could be covered under both policies.  But in *Greater New York* only the duty to defend — rather than direct coverage for the loss in question — triggered Insurer D's duty to defend the loss also covered by Insurer C.  Based on the language in the contracts, the court concluded that the "other insured" clause of Insurer C's contract provided only that its policy was excess "where both policies cover the same risk."  *Greater N.Y.* at *6.  *See also Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii), LLC,* No. Civ. 10-00637, 2012 WL 13018695, at *10 (D. Haw. June 29, 2012) (analyzing *Fieldston* and agreeing "where the same risk is covered by multiple policies, the 'other insurance' clause applies").  The court concluded as a result that the "other insurance" clause was not triggered, each insurer was required to defend at least one claim in the underlying suit as a primary insurer, and therefore *both* insurers had a duty to defend the entire action and were required to split the defense costs ratably.

Liberty contends that the same result ought to hold here, because like in *Greater N.Y.* and unlike in *Fieldston*, the insurers here do not concurrently cover any specific loss.  Liberty claims that *Greater New York* exhibits a general rule that the "other insurance" clause in a contract is triggered *only* when two contracts cover the same risk.

*Greater New York*, however, does not stand for a bright-line rule governing the applicability of "other insurance" clauses.  There is no specific rule as to when an "other

9

insurance" clause is triggered or not, as Liberty argues; instead, as is true of all contracts under New York law, the unambiguous language of the contract controls. *See, e.g.*, *Olin Corp.*, 704 F.3d at 99. The court in *Greater New York*, as in all the cases cited by the parties, properly reached its result through analysis of the specific terms of the contracts at issue. *See*, *e.g.*, *Greater N.Y.*, 2020 WL 5370419 at *6 -*7 (analyzing the "other insurance" clauses in detail and comparing specific definitions and clauses with those in other insurance contracts.) Here, the Court must similarly look to the actual language of the "other insurance" clauses in both policies.

      The contracts here support Berkley's position. Berkley's "other insurance" clause unambiguously states that "[w]hen any other insurance has a duty to defend a Claim, we will have no duty to defend the Claim." This language distinguishes this case from *Greater New York* and even from *Fieldston*. While the "other insurance" clauses in *Fieldston, Greater New York*, and in this case are identical as concerns the CGL insurer, Berkley's "other insurance" clause differs in two notable ways from clauses at issue in both of those cases, as can be seen clearly in the tables above.

      First, as Berkley points out in its briefing, its "other insurance" does not include the word "loss," only "claim." By contrast and for example, the clause in *Greater New York* stated that the policy was excess only when any other policy covered "any *Loss* resulting from any *Claim*." *Id.* at *6. This distinction is subtle but meaningful. The "other insurance" clauses in the other cases defined when the insurance was excess in terms of the *losses* covered under the policies. Naturally, then, the courts in *Fieldston* and *Greater New York* looked to whether the two policies covered the same loss as determinative of whether the "other insurance clauses" applied. Different facts with regard to the covered losses and whether they overlapped understandably led to different results.

But Berkley's policy defines when its insurance is excess in terms of *claims* against its insured and when others have a duty to defend. Therefore, the Court here must look to whether the claim, not the underlying loss, is covered by another policy. Liberty does not cover a loss that overlaps with Berkley's coverage, as was also true of the insurers in *Greater New York*, but it does have a duty to defend — which "is broader than [its] duty to indemnify" — that overlaps with Berkley's policy. Therefore, Liberty's duty to defend *does* trigger the terms of Berkley's "other insurance" policy. And because that policy applies, as in *Fieldston*, Liberty therefore had the obligation to defend the underlying action without contribution from Berkley, regardless of each party's respective obligations to indemnify. *Id.* at 266.

Second, the duty to defend is a "purely contractual obligation" that may be modified by the parties to an insurance contract. *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y.), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013). And unlike any of the other cases the parties have provided, Berkley's "other insurance" clause unambiguously narrows its duties to defend: "When any other insurance has a duty to defend a Claim, we will have no duty to defend the Claim; if no such other insurance defends the Claim, we will have the right but not the duty to defend the Claim." This clause plainly restricts Berkley's duties under these exact facts, where another party has conceded it has a duty to defend; indeed, Berkley's contract restricts its duty to defend even where another party does *not* have a duty to defend. *Cf. Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 117 (2d Cir. 2005) (stating an insurer may restrict its duty to defend so long as it does so with "plain[] language.") Any interpretation of a contract that "has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Olin*,

11

704 F.3d at 99 (citation omitted).  Liberty's construction would render this sentence of Berkley's policy meaningless, and thus is to be avoided.

The result is that Liberty had the primary obligation to defend the underlying action, including the claims that pertained to losses covered by Berkley, and therefore is not entitled to reimbursement for part of its costs.  To hold otherwise would distort the meaning of Berkley's contract.  "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir. 1993); *accord Int'l Multifoods Corp. v. Com. Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002).  As the court said in *Fieldston*, "[i]f the policies were drafted using different language, we might hold differently, but we may not judicially rewrite the language of the policies at issue here to reach a more equitable result."  16 N.Y.3d at 265.

### B.     Waiver and Estoppel

Liberty also argues that Berkley waived its "other insurance" defense by providing its own defense counsel to associate with Liberty in the underlying action, who participated in a limited fashion and shared some of the litigation costs, and by splitting the settlement with Liberty.

"[W]aiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence.  Waiver requires proof of a voluntary and intentional relinquishment of a known and otherwise enforceable right." *See Peck v. Peck*, 649 N.Y.S. 22, 232 A.D.2d 540, 540 (2nd Dep't 1996) (citations and internal quotations omitted).  Berkley demonstrates, and Liberty does not dispute, that Berkley participated in a limited fashion in the underlying action pursuant to a clear reservation of rights preserving its "other insured" defense, which it consistently asserted.  (*See* ECF No. 92 at 8 – 10.)  Nor, as Liberty argues, did Berkley's actions

12

override its reservation of rights. Berkley provided its own defense counsel in the underlying action, but the issue in this case is whether Berkley was also obligated to share the costs for the defense counsel that *Liberty* provided. Under these circumstances, Berkley's limited participation does not amount to a waiver of any defenses it has against Liberty's attempts to force it to also subsidize their own defense obligations. *See, e.g.*, *Fieldston*, 16 N.Y.3d at 265 ("Although an excess insurance carrier may elect to participate in an insured's defense to protect its interest, it has no obligation to do so.") (internal quotation marks and citations omitted). And finally, as explained above, the duty to indemnify and the duty to defend are distinct; therefore, Berkley's payment of settlement costs is a separate matter from its obligation to defend.

Liberty next argues that Berkley ought to be equitably estopped from asserting its "other insurance" defense, based on the same facts as its waiver argument. The elements of equitable estoppel for the estopped party are: (1) conduct which amounts to a false representation or a concealment of material facts; (2) an intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. *See Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 138 (S.D.N.Y. 2016). Moreover, the "parties asserting equitable estoppel must show with respect to themselves: (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions." *Id.*

Liberty has not adduced facts meeting any of these elements or justifying any ways in which Berkley's limited participation in the underlying action — again, under a specific reservation of rights — caused Liberty to change its position in any injurious way. In short, Liberty has not demonstrated through either its facts or its cases that Berkley ever relinquished by word or action its right to assert its "other insurance" defense.

IV.     Conclusion

For the foregoing reasons, Berkley's motion for summary judgment and for a declaratory judgment is GRANTED and Liberty's motion for summary judgment and for a declaratory judgment is DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 87 and 94 and to close the case.

SO ORDERED.

Dated: March 20, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge